592 So.2d 883 (1991)
STATE of Louisiana
v.
Shawn L. GRANIER.
Nos. 89-KA-0230, 89-KA-0888.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1991.
*884 William A. Roe, Belle Chasse, for appellant.
Before SCHOTT, BARRY and BYRNES, JJ.
BYRNES, Judge.
After defendant's conviction and sentenced were affirmed, State v. Granier, 563 So.2d 1354 (La.App. 4 Cir.1990), the Supreme Court 578 So.2d 528, remanded the case to the court for reconsideration in light of Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), State v. Collier, 553 So.2d 815 (La.1989), and State v. Wille, 559 So.2d 1321 (La.1990). Shawn Granier was charged with distribution of marijuana and was found guilty by jury under La.R.S. 40:966(A)(1). He was thereafter adjudicated a multiple offender and sentenced to ten years at hard labor under La.R.S. 15:529.1. Granier appeals from that conviction relying on two assignments of error. We affirm.
On February 12, 1987, Agent Keith Ruggles of the Plaquemines Parish Sheriff's Office went to the Den Lounge in Venice, Louisiana as part of an undercover operation, known as Clean Sweep, being conducted in that area. Upon entering the bar, Agent Ruggles saw a confidential informant and began conversing with him. The informant told Agent Ruggles that a man known as Shawn Granier had been in the bar earlier trying to sell marijuana and that he told Granier that he had a friend who may be interested later. At around 10:00 p.m. the informant introduced Agent Ruggles to Granier, as his friend "Toney". A short time later, Granier indicated to Agent Ruggles to go outside. Once outside the bar, Granier sold Agent Ruggles a substance, later identified as marijuana, for twenty dollars. After the deal was concluded, Agent Ruggles returned to the narcotics office, followed by the backup team composed of Agents Charles Young and Terry Rutherford. Subsequently in October 1987, a warrant for Granier's arrest was issued. On November 19, 1987, Granier was charged by bill of information for violating R.S. 40:966(A)(1) relative to distribution of marijuana. Granier pleaded not guilty. On May 9 and 10, 1988 a jury trial was held. The jury found Granier guilty as charged. On October 25, 1988, the court sentenced Granier to serve seven years at hard labor. On January 20, 1989, the State filed a multiple offender bill of information charging Granier with being a second felony offender under La.R.S. 15:529.1. Granier pleaded not guilty. On March 2, 1989, the court found Granier guilty, vacated the seven year sentence, and resentenced him to serve ten years at hard labor. From this conviction, Granier appeals.

*885 ASSIGNMENTS OF ERROR
Granier contends two assignments of error. First, Granier contends that the trial court erred by failing to either dismiss the jury and/or grant a motion for mistrial based on Granier's claim that the state used its peremptory challenges to systematically exclude blacks from the jury. In his second and third assignments, Granier contends that the trial court committed reversible error by admitting hearsay testimony from a police officer witness on what he was told by a confidential informant regarding a conversation between the informant and Granier.

SCOPE AND COURSE
In his first assignment of error, Granier contends that the trial court erred by failing to either dismiss the jury and/or grant the motion for a mistrial which was based on the claim that the State used its peremptory challenges to systematically exclude blacks from the jury, thus denying Granier's his right of due process and equal protection. Granier argues that the protections of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), as accepted by this state in State v. Thompson, 516 So.2d 349 (La.1987), should be extended to him, a white defendant, in light of Louisiana Criminal Code of Procedure article 795.
In Batson, the United States Supreme Court discussed the criteria to establish a prima facie case of purposeful discrimination in the selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges. In Thompson, the Louisiana Supreme Court stated, "To establish a prima facie case under Batson, the defendant must show that he is a member of a cognizable racial group and that the State has exercised peremptory challenges to remove members of his race from the petit jury." Id. at 353. A "cognizable racial group" as defined by the United States Supreme Court in Castaneda v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), is "one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or applied." Once the prima facie showing has been made by the defendant under Batson, the burden shifts to the state to put forward a neutral explanation for challenging black jurors. Batson, supra; Thompson, supra.
However, in the recent United States Supreme Court decision of Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 1366, 113 L.Ed.2d 411 (1991), the Court held that a criminal defendant may object to the race-based exclusions of jurors effected exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race. "Although a defendant has no right to a `petit jury composed in whole or in part of persons of [the defendant's] own race,' Strauder [v. West Virginia] 100 U.S. [303] at 305, 25 L.Ed. 664 [ (1880) ] he or she does have the right to be tried by a jury whose members are selected by non-discriminatory criteria." Powers v. Ohio, 111 S.Ct. at 1367. "We hold that the Equal Protection Clause prohibits a prosecutor from using the state's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race." Id. at 1369.
In State v. Collier, 553 So.2d 815, 819 (La.1989) the Louisiana Supreme Court states that:
The trial judge must determine whether the defendant has established the requisite prima facie case. In making this determination, the trial judge should consider all relevant circumstances, including any pattern of strikes by the prosecutor against black jurors and any questions or statements by the prosecutor during voir dire examination in exercising his challenges which may support or refute an inference of purposeful discrimination.
However, the trial judge need not find a prima facie case of purposeful discrimination, but may require a prosecutor to explain its peremptory challenges as a precaution in the event the appellate court determined there was a prima facie showing. Id. at fn. 5. If the trial court finds a prima facie showing of the exclusion of *886 jurors based solely upon their race, the burden shifts to the prosecutor to show its challenges were exercised for reasons other than race. This showing would be something less than a challenge for cause. Id. at 820. In consideration of Powers, the showing would be something more than the prosecutor's assumption or intuition that the juror will be partial to the defendant because of the juror's race. Id. The neutral explanation must be one which is clear, reasonably specific, legitimate and related to the particular case at bar. Id. The trial court must then assess the weight and credibility of the explanation in order to determine whether there was a purposeful discrimination in the use of the challenges.
Granier contended that the prosecutor used its peremptory challenges to exclude potential black jurors based solely on their race. Granier moved to dismiss the jury. Because Granier was a white defendant, thus not a member of a "cognizable racial group" as defined in Castaneda, the trial court was unable to extend Thompson, at that time. However, before the trial court ruled on the motion, the prosecutor placed his reasons into the record for exercising each of his peremptory challenges. The prosecutor's reasons for challenging potential black jury members included challenges against jurors who had criminal charges personally, challenges against potential jurors who had family members with criminal convictions, and a challenge against a juror who was under investigation. Another juror had a back problem for which she was receiving pain medication and could not sit for a long time. The prosecutor challenged a juror who knew the defense attorney's brother, and also because of that juror's age. But before the prosecutor had expended his peremptory challenges, he accepted a black juror, stating that the juror was middle aged and had prior jury experience. The trial court, having assessed these reasons for the exercised challenges, found them to be racially neutral. The applicable standard of review requires that we give great weight to the factual conclusions of the trier of fact, in this case the trial judge. Mascaro v. Davis, 420 So.2d 755 (La.App. 4th Cir.1982).
In examining the prosecutor's reasons in Thompson, the Louisiana Supreme Court concluded that the prosecutor did not exercise its peremptory challenges in a discriminatory fashion. Even though Thompson failed to prove a prima facie case of purposeful discrimination, thus also failing to shift the burden of proof to the prosecutor, the Court examined the prosecutor's reasons for challenging the jurors. Two of the challenges were based on the juror's prior arrest. Another was based on the age of the juror. In this case, the trial court denied Granier's motion based on the prosecutor's reasons similar to these given in Thompson. Thus, we cannot find the trial court erred in denying Granier's motion to dismiss the jury and to grant a mistrial. Therefore, this assignment has no merit.
In his second and third assignments of error, Granier contends that the trial court erred by admitting hearsay testimony from a police officer on what he was told by a confidential informant regarding a conversation between Granier and the informant. "Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, when the statement is being offered as an assertion to show the truth of matters asserted therein and thus rests for its value upon the credibility of the out-of-court asserter." State v. Wille, supra, 559 So.2d at 1329. The testimony at issue took place between Agent Ruggles and the prosecutor as follows:
AGENT RUGGLES:
On February 12, I was sent to the Den Lounge in Venice, Louisiana. I was instructed by Agent Charles Young, to go down there because of supposedly widespread drug trafficking in that particular lounge area.
I entered the lounge at approximately eight p.m. that night. I observed a confidential informant that was sitting at the bar. I walked over there, sat down and began to talk with him.
He made a statement to me, that a white male

*887 MR. ROE:
I object to hearsay, your Honor.
THE COURT:
The objection is noted but overruled.
MR. ROE:
Note the objection to the Court's ruling.
THE COURT:
So noted.
BY MR. BALLEY:
Please continue.
AGENT RUGGLES:
A white male known as Shawn Granier was attempting to sell marijuana there earlier. And the informant had declined to purchase, but stated to him that he had a friend who may be possibly would be interested in purchasing some later.
MR. ROE:
Excuse me, Mr. Ruggles, the same objection based on hearsay. I also move for a mistrial based on the allegation of other crimes, your Honor.
THE COURT:
The objection is noted and overruled. And the motion for a mistrial is likewise denied.
Agent Ruggles, in his testimony, states that he was told Granier was "attempting to sell marijuana there earlier", thus referring to another crime Granier attempted to commit. Granier contends the prosecution offered the testimony to illustrate Granier's propensity toward drug dealing. Reference to another crime during testimony is impermissible without compliance to State v. Prieur, 277 So.2d 126 (La.1973).
As a prerequisite to the admissibility of evidence of other crimes, the state must within a reasonable time before trial furnish in writing to defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. Id.
However in Prieur, the Louisiana Supreme Court expressly recognized that "res gestae" evidence is an exception to the prohibition of "other crimes" evidence.
La.R.S. 15:447 and La.R.S. 15:448[1] state respectively:
Res gestae are events speaking for themselves under the immediate pressureof the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitant of it, or form in conjunction with it one continuous transaction.
Also, the court noted that notice is not required as to evidence of offenses which form part of the "res gestae", whereas notice would be required under the exceptions to "other crimes" evidence found in La.R.S. 15:445 and La.R.S. 15:446.
This Court, in State v. Reaux, 539 So.2d 105 (La.App. 4th Cir.1989) approved the First Circuit's guidelines in State v. Craddock, 435 So.2d 1110 (La.App. 1st Cir.1983), for the admission of the other crimes evidence under the res gestae exception. The court in Craddock set forth following guidelines:
In order to constitute res gestae, the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form, in conjunction with it, one continuous chain. La.R.S. 15:448; State v. Sharp, 414 So.2d 752 (La.1982). Also, evidence of other crimes which are part of the res gestae is always admissible without balancing its probative value against its prejudicial effect. State v. Stucke, 419 So.2d 939 (La.1982).
In this case, Agent Ruggles was relating in narrative form all of his actions which led up to his approaching Granier for the purpose of purchasing the marijuana. *888 Agent Ruggles' initial conversation with the confidential informant led to the informant introducing Agent Ruggles to Granier. The entire sequence of events occurred within a few hours in the same location. "A very close connexity between the charged offense and the other crimes evidence sought to be introduced under the res gestae exception is required." State v. Craddock, 435 So.2d at 1117. There was a close connexity in time and place between Agent Ruggles' conversation with the confidential informant and the subsequent drug transaction between Agent Ruggles and Granier. Thus, Ruggles testimony was part of the res gestae and complied with the requirements of the exception to the prohibition against "other crimes" evidence.
Granier also argues that the trial court should not have allowed Officer Ruggles to testify as to what the confidential informant told him because the conversation constituted inadmissible hearsay evidence. However, the Louisiana Supreme Court has held that a police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. State v. Watson, 449 So.2d 1321 (La.1984). Such statements, which also often fall into the res gestae exception, are admissible not to prove the truth of the statement being made, but rather are offered to explain the sequence of events leading to the arrest of the defendant and, as such, are not hearsay. State v. Wille, supra, 559 So.2d at 1330; State v. Calloway, 324 So.2d 801 (La.1975); State v. Lard, 459 So.2d 1189 (La.App. 4th Cir. 1984), writ denied 464 So.2d 1376 (La.1985). The testimony of Agent Ruggles was not offered to prove that Granier and the confidential informant had discussed a drug transaction earlier. Rather, the testimony was offered to explain what led Officer Ruggles to approach Granier over all of the other patrons in the Den Lounge that night for the purpose of purchasing the marijuana. Thus, this testimony in respect to Granier's hearsay contention was admissible under Lard. Furthermore, the introduction of their testimony did not constitute the use of "[m]arginally relevent nonhearsay evidence.... as a vehicle to permit the introduction of highly relevant and highly prejudicial hearsay evidence...." as proscribed by Wille, supra, 559 So.2d at 1331. Therefore, the trial court did not abuse its discretion in allowing in the testimony. These assignments have no merit.

CONCLUSION
Granier was not deprived of his right of Equal Protection and Due Process because the prosecution did not purposefully use its peremptory challenges to exclude members of a racial group from the petit jury. Also, the trial court did not err in allowing Agent Ruggles' testimony of the sequence of events leading directly to the arrest of Granier because it constituted part of the res gestae. For the foregoing reasons, the decision of the trial court is affirmed.
AFFIRMED.
BARRY, Judge, dissents with reasons.
Agent Ruggles' testimony that Shawn Granier (the defendant) "... was attempting to sell marijuana ..." is flat-out hearsay.
That hearsay does not come under the Prieur "other crimes" exception as res gestae.
Agent Ruggles' testimony may have been intended to show the sequence of events, but the net effect was to tie a noose around the defendant's neck.
The hearsay testimony reflected on the truth of the matter asserted and should have been excluded. State v. Wille, 559 So.2d 1321 (La.1990).
NOTES
[1] La.R.S. 15:447 and La.R.S. 15:448 were repealed effective January 1, 1989 due to the adoption of the new Louisiana Code of Evidence. However, these statutes were in effect at the time of this trial.