MURPHY, J.
| defendant, Joshua Gautier, appeals his conviction for possession of heroin. For the reasons' that follow, we affirm defendant’s conviction and sentence.
STATEMENT OF THE CASE
On September 8, 2014, the Jefferson Parish District Attorney’s Office filed a bill of information charging defendant, Joshua Gautier, with five counts[1] of violating La. R.S. 40:966(C). On October 28, 2014, defendant pled not guilty at his arraignment. On September 11, 2015, the State filed a Motion in Limine to use the statement of an “anonymous complainant” which ultimately led to defendant’s arrest. The trial court granted the State’s motion following a hearing oif October 14, 2015. Defendant proceeded to a jury trial for one count of possession of heroin on October 14, 2015, at the conclusion of which he was found guilty as charged. On that same date, defendant was sentenced to four years imprisonment at hard labor, with credit for time served; the sentence was suspended and defendant was placed on four years of active probation. On October 15, 2015, defendant timely sought the instant appeal.
FACTS
At trial, Deputy Kristian Fricke testified that on April 25,2014, he was employed by the Jefferson Parish Sheriffs Office, assigned to the First District. On that date, while at the First District Station, an “anonymous white male” who identified himself as a “retired D.E.A. agent out of Miami” walked up to-the station, located at 4116 Hessmer, and stated that he had observed a black male and two white males engage in what he believed to be a. “hand-to-hand drug transaction” at a nearby apartment complex. In acting on the information, Deputy Fricke and other deputies,- in full uniform, drove their marked vehicles to 4218 |2Hessmer, the location of the apartments identified by the anonymous source. Upon arriving at the apartment complex, Deputy Fricke observed one black male and two white males who fit the descriptions given, by the anonymous source. As he exited his vehicle, Deputy Fricke observed one of the white males, later identified: as defendant, discard an object with his right hand. While closing the distance between himself and the white male, Deputy Fricke advised Deputy Grandsart of his observation of the discarded object, and Deputy Grandsart confirmed that he,had. seen-it being discarded as well. Deputy Grandsart then retrieved the discarded obj,ect,- which consisted of .a “tan colored powder substance in a clear white plastic bag.” At that time, Deputy Fricke handcuffed defendant and detained him for further investigation. A preliminary drug test on the substance in the retrieved bag was positive for heroin.
After it was discovered that one of the two men standing by defendant in the apartment complex, David Robertson, had a warrant for his arrest out of Indiana, he was placed under arrest. Robertson consented to a search of his apartment and admitted that he had a quantity of heroin there. Although Robertson’s girlfriend flushed the heroin down.the toilet prior to the time that the Deputies arrived to search the apartment, a digital scale which had a “tan.colored powdery substance on it” was found,, along with multiple baggies used .for the packaging and distribution of heroin. These items were “consistent with the packaging” of the object that defendant threw on the ground.
Next, Deputy Lance Grandsart testified that he was assigned to the First District station on April 25, 2014. On that date, a *840 man who wished to remain anonymous walked' up to the station to report possible illegal narcotic activity behind a nearby apartment complex. Four deputies, including Deputy Grandsart, drove their marked police units to .the identified complex to investigate. After entering the complex,-Deputy Grandsart saw three men standing along a back Rfence' who appeared to match the description provided by the anonymous source. As- Deputy Grandsart exited his car, one of the men made “a distinct ’ motion with his right hand,” and Deputy Grandsart saw an object fly out of the man’s hand and onto the ground. The man who threw the object was identified by Deputy Grandsart in court as defendant. - Deputy Fricke told Deputy Grandsart that he had seen defendant throw something to ■ the ground. Deputy Grandsart had seen where the object fell and retrieved it. The object was a small clear plastic baggié with a powdery light brown substance in it. Because he believed that the - substance in the bag could be illegal narcotics, Deputy Grand-sart secured it in his unit and contacted the Crime Lab to conduct a preliminary test of the substance, which was positive for heroin.
Colonel Timothy Scanlan of' the Jefferson Parish Sheriffs Office 'was 'qualified as an expert in the field of crime scene investigation and crime scene processing and analysis; Colonel Scanlan did not have an investigative rolé' in defendant’s case. Colonel Scanlan explained 'that the Jefferson Parish Sheriffs Office Crime Laboratory does not routinely process small bags of drugs for fingerprints or DNA evidence, because the surface is not suitable for testing. Colonel Scanlan identified State’s Exhibit 3 as the- specimen that was tested in defendant’s case, which was determined to be heroin.[2]
Justin Johnson testified that on April 25, 2014, he and defendant drove from Chal-mette to go to a computer café, and stopped at a gas station to meet with David Robertson, who was defendant’s former neighbor. Defendant and Johnson followed Robertson to his apartment from the gas station. While at Robertson’s apartment complex, the three men talked and smoked cigarettes along the back fence when several police officers drove in and “detained everyone.” One of the | officers was searching along the fence line and found a bag, and asked defendant what it was. Johnson was not arrested that day. Johnson testified that he did not see defendant throw anything while they were standing there, and also did not see a drug transaction happen between defendant and Robertson. On cross-examination, Johnson testified that the three men stayed in the same spot in the apartment parking lot the entire time they were talking that day.
Defendant, Joshua Gautier, testified that on April 25, 2014, he and “Justin” were headed to a computer safe named “Dibbz” when they saw “David” at a gas station and followed David [Robertson] to his apartment. The three men were outside of David’s apartment, talking and smoking, when several police officers showed up and “found something.” When the police asked defendant what “it” was, he said that he “didn’t know.” Defendant knew that Robertson had sold drugs in the past, but said -he did not know that Robertson was still selling drugs at the time he went to Robertson’s - apartment. Defendant admitted that he had previously smoked marijuana and taken pharmaceutical drugs. *841 He was arrested for marijuana possession, but “joined a drug court program.” Defendant testified that on the day he went to David’s apartment, he did not go there to buy drugs from David and that, he did not have any money on him. Defendant denied that he threw anything when the police showed up, but said that he had placed a lighter in his back pocket with his left hand.
DISCUSSION
In his sole assignment of error, defendant contends that the trial court erred in failing to suppress as hearsay what the confidential informant told the arresting officers. While defendant. did not file a motion to suppress, the State filed a Motion in Limine before trial seeking the admission of the anonymous complainant’s statements, arguing that they were not hearsay. Defendant filed a Memorandum in Opposition to State’s Motion in Limine, contending that the I (¡State’s motion should be denied because the “statement that defendant was ‘dealing drugs’ [was] not necessary to complete the State’s story in time and place.”[3] Defendant also argued that the statement was overly prejudicial. As it does on appeal, the State contended below that it was not introducing the statement for the truth of the matter asserted but argued the statement was “res gestae[4] in order for the police officers to alert the jury as to the reasons why they took the actions they did.” . •
La. C.E. art. 801 defines hearsay as “statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802; State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1078, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055. A trial judge’s determination of the admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. State v. Odoms, 01-1033 (La.App. 5 Cir. 3/26/02), 815 So.2d 224, 230-31, writ denied, 02-1185 (La.11/22/02), 829 So.2d 1037.
In ruling to allow the statement of the anonymous source to be introduced, the trial court found:
*842 | ftthat based on the Code of Evidence ... this is not hearsay, it is merely an indication, police officers have a right to explain the conduct that they’re in. They don’t have a right to go into all of the statements, but they have a right to explain why they did what they did.
In a similar case, State v. Henry, 08-658 (La.App. 5 Cir. 10/27/09), 27 So.3d 935, 944, writ denied, 09-2485 (La.04/23/10), 34 So.3d 269, this Court noted:
A law enforcement officer may testify about information provided by another individual without it constituting hearsay if it is offered to explain the course of the police investigation and the steps leading to the defendant’s arrest. A law enforcement officer’s testimony about statements made to him by other persons involved in the case in order to explain their actions are not hearsay. Instead, these statements often fall under the res gestae exception and are admissible, not to prove the truth of the statement being made, but rather to explain the sequence of events leading to the arrest of the defendant.
The Louisiana Supreme Court has admonished that marginally relevant non-hearsay evidence should not be used as a vehicle to permit the introduction of highly relevant and highly prejudicial hearsay evidence which consists of the substance of an out-of-court assertion that was not made under oath and is not subject to cross-examination at trial. State v. Wille, 559 So.2d 1321, 1331 (La.1990).
Here, contrary to defendant’s contention that he was identified as a “drug dealer” by the anonymous source, no evidence of this appears in the record. The anonymous source indicated, in summary, that he had recently seen three men, a black male and two white males, engage in what appeared to be a drug transaction.[5] According to the testimony of the deputies, the-defendant was never identified or described to them in any detail, even with regard to whether defendant was “black” or one of the two “white” men at the apartment complex. The anonymous source also apparently did not identify the purported seller(s) and buyer(s) of narcotics in the alleged transaction. Deputy Fricke and Deputy Grandsart both testified that the anonymous source indicated to them that sale of'drugs in his apartment complex was an “on-going problem” that had involved past transactions. Again, ^defendant was not identified as being a part of any past drug transactions. However, the tip from the anonymous source about ongoing drug activity at his apartment complex was the reason that the deputies went to investigate, at which time they observed defendant discard, in plain view, a packet of what was later identified as heroin. Under the facts of this case, we do not find an abuse of discretion by the trial court in concluding that the statement at issue was not inadmissible hearsay, as defined by La. C.E. art. 801.[6]
Defendant also argues, in part, that his arrest was illegal. However, defendant did not file a pre-trial motion to suppress evidence nor did he object to the admission of the State’s evidence regarding the circumstances of his arrest at trial. Any objection to an allegedly illegal search, seizure, or arrest is waived for the purpose of appeal by the failure to file a motion to suppress. See La.C.Cr.P. art. 703(F); see also State v. Alexander, 08-580 (La.App. 5 Cir. 2/25/09), 8 So.3d 732, writ denied, 09-0717 (La.12/11/09), 23 *843 So.3d 912. Furthermore, “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence.” La.C.Cr.P. art. 841(A). Defendant waived any arguments he might have made with regard to the legality of his arrest. Accordingly, we find defendant’s assignment of error to be without merit.
ERRORS PATENT REVIEW
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). Our review revealed no errors patent on the face of the record which require corrective action.
CONCLUSION
For the foregoing reasons, we affirm defendant’s conviction and sentence.

CONVICTION AND SENTENCE AFFIRMED

. In the separate counts, defendant was charged with being in possession of Heroin, Amphetamine, Methadone, Quetiapine, and Suboxone. ■

. By stipulation between defendant and the ■ State, the scientific analysis report by forensic scientist Pamela D, Williams Cyprian, which determined that the contraband found on the ground by deputies in this case was heroin, was introduced by the State as an exhibit.

. The record demonstrates that Deputy Fricke testified that the anonymous source stated that “he observed one black male, and two white unknown males, which he believed to bé in a hand-to-hand' drug transaction.” Deputy Grandsart testified that the anonymous source, said'that there was "possible illegal narcotic activity happening behind another complex near by." While an "Arrest Report And Probable Cause' Affidavit” dated April 25, 2014, indicates that "The anonymous complainant further advised there were two (2) white males and one (1) black male standing in the rear parking lot of the Apart- ' ment Complex smoking and dealing illegal narcotics,” this document was not introduced as an exhibit at trial, and therefore not considered by the jury.

. As noted by this Court in State v. Richardson, 13-886 (La.App. 5th Cir. 05/28/14), 142 So.3d 314, 325, citing State v. Taylor, 01-1638 (La. 1/14/03), 838 So.2d 729, cert. denied, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004), "The res gestae doctrine is designed to allow the story of the crime to be told in its entirety, by proving its immediate context of happenings in time and place.” Furthermore, as explained by the Louisiana Fourth Circuit Court of Appeal in State v. Granier, 592 So.2d 883, 888 (La.App. 4th Cir.1991), "In order to constitute res gestae, the circumstances and declarations must be necessary-incidents of the criminal act, or immediate concomitants of it, or form, in conjunction with it, one continuous chain.” In Granier, the court concluded that, "testimony of the sequence of events leading directly to the arrest of Granier [was admissible] because it constituted part of the res gestae.” Id. at 887.

. See footnote 3, supra.

. State v. Hawkins, 96-0766 (La. 1/14/97), 688 So.2d 473, 477; State v. Young, 99-1264 (La.App. 1 Cir. 3/31/00), 764 So.2d 998.